OLIVER TYPEWRITER CO. v. UNITED PUBLISHERS' ASS'N.

(Supreme Court, Appellate Term.   January 18, 1912.)

1. PRINCIPAL AND AGENT (§ 173*)—RATIFICATION—EVIDENCE—SUFFICIENCY.

In an action for the balance due upon typewriters, evidence *held* insufficient to show that the seller's district superintendent authorized and ratified any agreement made by the salesman that the balance might be paid in advertising.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 659–661; Dec. Dig. § 173.*]

2. PRINCIPAL AND AGENT (§ 173*)—RATIFICATION—BURDEN OF PROOF.

A buyer, on being sued for balance due on typewriters, had the burden to show a special arrangement made with the salesman, and ratification thereof by plaintiff, whereby he was not to pay the balance in cash as provided in his order.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 659–661; Dec. Dig. § 173.*]

3. EVIDENCE (§ 441*)—PAROL EVIDENCE—EFFECT ON WRITTEN ORDER—ADMISSIBILITY.

A written order for typewriters, reciting that a balance on the price was to be paid in cash, cannot be varied by showing that it was to be paid in advertising.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2030–2047; Dec. Dig. § 441.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by the Oliver Typewriter Company against the United Publishers' Association.   Judgment for defendant, and plaintiff appeals. Reversed, and new trial ordered.

Argued November term, 1911, before GIEGERICH, LEHMAN, and PENDLETON, JJ.

Cleary & Miller, for appellant.

Shapiro & Levy (Aaron W. Levy, of counsel), for respondent.

LEHMAN, J.   The plaintiff has brought suit for a balance of $120 due upon the sale and delivery of six typewriters to the defendant corporation.   The defendant admits the sale and delivery of the instruments, but claimed that the indebtedness of $120 was canceled and discharged prior to the beginning of the action.   At the trial it was not disputed that the defendant's president had signed a contract for the purchase of six typewriters.   The written contract was upon a blank form of the plaintiff company, and read as follows:

"The Oliver Typewriter Co.   General Offices, Chicago.   New York Branch, 310 Broadway, June 20, 1910—Gentlemen:   Please ship United Publishers'

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Company 51 Beekman street, six regular Oliver typewriters complete, with baseboard and cover, for which we agree to pay one hundred dollars each, as follows: Less 10% equals $540. Advertising, $270. Remingtons, 7/225319, 7/226818, 7/146396, 6/149129, 6/85421, 6/112119, and balance cash $120.    In case of time payments, the undersigned agrees to execute regular forms of the Oliver Typewriter Company, and, if a typewriter is accepted in part payment, to make delivery f. o. b. New York.   All verbal and written agreements are merged in the contract.   [Signed]    United Publishers' Association. [Signed] Arthur Koppel, President.   This order not valid until approved by the Oliver Typewriter Company."

[1, 2] This contract was delivered to the Typewriter Company, approved by it, and the typewriters delivered to the defendant, who concededly did not thereafter pay the $120 in cash.   It is claimed, however, that this indebtedness was discharged because prior to the signing of the contract the plaintiff's agent told the defendant's president that payment of the amount could be arranged by supplying space to the agent for advertising; that the president of the defendant corporation telephoned to the district manager of the plaintiff corporation for New York, and was informed that the company would be willing to accept this arrangement.   Thereupon the defendant delivered to the plaintiff's agent blank contracts for advertising space to the amount of $60 each in two publications, and the agent then indorsed upon the duplicate copy of the agreement retained by the defendant the following words:

"Received payment in full on machines purchased on this order.   Oliver Typewriter Co., per C. McNamee."

There is no contention that the agent had any authority to make any agreement to accept payment, except as provided in the written contract.   The terms therein inserted were authorized under printed instructions from the Chicago office of the plaintiff, and the agent had no authority to give any other terms.   The defendant, therefore, does not dispute that it has no defense to the cause of action, except through its testimony that the district superintendent authorized and ratified the agent's arrangement before the contract was signed.   The district superintendent, however, denies this conversation, and shows that he discharged the agent because he apparently entered into a private arrangement with the defendant by which he secured and retained money or advertising for his personal use.   Of course, this presents an issue of veracity between himself and the defendant's president.   The defendant has the burden of proving the alleged special arrangement and ratification.   The circumstances surrounding the transaction not only fail to corroborate its president's story, but directly contradict it.   The fact that he inserted in writing in a contract that payment shall be in part in advertising and in part in cash is admitted.

[3] The written contract cannot be varied by parol, yet the defendant is claiming that contemporaneously with this agreement it made another agreement that the cash payment should be waived and canceled by the acceptance of a larger amount of advertising.   If this had been previously agreed upon, it should have been inserted in the agreement.   Conceding, without deciding, that technically the arrangement was that the written contract was first to have a valid in-

ception according to its terms, and that the arrangement that the cash consideration was thereafter to be canceled by the acceptance of additional advertising space was an independent contract, we cannot close our eyes to the improbability of the one contract being put in writing and delivered to the agent for transmission to his principal, while the second independent contract is evidenced by no writing, except the signed receipt of the agent, which is placed only upon the duplicate copy retained by the defendant. Moreover, the story of the defendant's president is directly contradicted by the unexplained written proof in the form of a letter written by the defendant's president to the agent, in which he says:

"The Oliver people are pressing me for payment of $120, which they claim I owe them. As you know, our last transaction cleaned up the decks, and I hold your receipt as a representative of the company. An immediate adjustment of this matter must be made, and I request that you justify my position, because, if you have not turned in $120 to your principal, it would be equivalent to having stolen the money from them. You certainly have no right to treat them or myself in this way, and I insist upon your giving this matter immediate attention. Since my dealings with you as representative of the Oliver people, our transactions have always been satisfactory until the present time, and I cannot understand this present procedure. An explanation is due from you at once to both the Oliver Co. and myself. Your receipts heretofore have never been questioned by the Oliver Co., and I cannot understand why they should be at this late day.

"Yours truly,                 United Publishers' Association,
                                 "Arthur Koppel, Pres."

I fail to see how this letter can be reconciled with Mr. Koppel's testimony that the receipt was given in pursuance of an arrangement ratified by the district superintendent of the Oliver Company and consummated by the delivery of advertising space to the company and used by them. If this story is correct, no explanation could well be required from the agent.

Moreover, even if this story was true, the defendant has failed to show that the plaintiff authorized the alleged independent contract for advertising space. The New York branch had undoubtedly authority to accept contracts of sale; but this contract cannot be considered part of the contract of sale, for then it would vary its terms. Regarded as an independent contract for advertising, the defendant has failed to show any authority, either express or apparent, in the district superintendent to make the contract. On the contrary, the defendant's president stated on the stand that the advertising went through the Chicago office.

Judgment should therefore be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.